O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAU NHU LE TRI,<br><br>                          Petitioner,<br>           v.<br><br>D. MARIN et al.,<br><br><br><br>                        Respondents. | Case No.: 5:26-cv-00893-MEMF-AGR<br><br>**ORDER GRANTING IN PART PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 2]** |

Before the Court is the Motion for Temporary Restraining Order and Motion Preliminary Injunction filed by Petitioner Chau Nhu Le Tri. Dkt. No. 6 ("Motion"). For the reasons stated herein, the Motion is DENIED.

/ / /

/ / /

1

## I.    Background

### A.  Factual Background[1]

In 2010, Petitioner Chau Nhu Le Tri arrived in the United States. Dkt. No. 1 ("Petition") at 4. In 2023, Tri was found guilty of a criminal charge. *Id.* at 6.

Prior to February 1, 2026, Tri was held in the San Luis Obispo County jail. *Id.* at 2-3. After his release from county jail on February 1, 2026, Tri was detained and subsequently transferred to Adelanto Ice Processing Center. *Id.* Tri received a notice of revocation after being redetained, Dkt. No. 10-2, and did not receive an opportunity to contest his redetention, Petition at 2-3. On February 13, 2026, an Immigration Judge ordered Tri be removed to Vietnam. Dkt. No. 10-1.

Tri is set to initiate the process of requesting a Vietnamese passport. *Id.* at 3. ICE has not indicated that any travel documents have been procured or that Vietnam will accept Tri's removal. *Id.*

### B.  Procedural History

On February 23, 2026, Tri filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Petition. On February 23, 2026, Tri filed a Motion for Temporary Restraining Order[2] as well as a Motion for Appointment of Counsel. Motion; Dkt. No. 3. On February 25, 2026, the Magistrate Judge referred the case to the Federal Public Defender to consider appointment of counsel. Dkt. No. 6. On March 3, 2026, the Federal Public Defender filed a Notice of No Intent to Appear. Dkt. No. 7. On March 3, 2026, the Court issued an Order preserving the Court's jurisdiction over Tri's Habeas Petition. Dkt. No. 8. On March 4, 2026, Respondents filed an Opposition. Dkt. No. 10 ("Opposition"). On March 30, 2026, Tri filed a Reply. Dkt. No. 16 ("Reply").

## II.    Applicable Law

### A.  Preliminary Injunctions

---

[1] Unless otherwise indicated, the following factual background is derived from the Hung's Petition. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] The Court notes that it appears that Tri did not comply with Federal Rule of Civil Procedure 65(b)(1)(B) in filing his Motion as the Motion does not include a declaration certifying "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Given that Tri is detained and seeking emergency relief, and in light of the fact that Respondents do not argue that the Motion should be denied for failure to comply with Rule 65, the Court will address the Motion in the merits.

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(3).

### III.    Discussion

**A.  Applying the *Winter* factors, Tri is entitled to a temporary restraining order.**

Tri advances two grounds upon which a temporary restraining order should be granted. First, Tri argues that ICE unequivocally failed to provide notice or an opportunity to be heard prior to Tri's re-detention. Petition at 12-13; Motion at 2-3. Second, Tri asserts that there have been insufficient efforts to effectuate Tri's removal to Vietnam, and there is an unlikelihood that removal to Vietnam will occur in the reasonably foreseeable future. Petition at 9-11; Motion at 2-3. As such, Tri alleges that Respondents violated 8 U.S.C. § 241.13(i)(2)-(3). Petition at 12.

The Court addresses these grounds below.

    i.  The first *Winter* factor, likelihood of success on the merits, is met with respect to both grounds.

    1.  *There is no significant likelihood of Tri's removal to Vietnam in the reasonably foreseeable future.*

On his first ground, Tri argues that Respondents have failed to establish that his removal to Vietnam is likely to occur in the reasonably foreseeable future. Petition at 10; Motion at 3-4; Reply at 2-3. Specifically, Tri asserts that there is no indication that travel documents to Vietnam have been issued or the Government of Vietnam will accept Tri's removal. *Id.* Respondents counter, stating that they are not required to "pre-arrange" a noncitizen's removal travel before arresting them and thus, "[t]hat Petitioner does not yet have a specific date of anticipated removal does not make his detention indefinite." Opposition at 3.

In *Zadvydas*, the Supreme Court established that a six-month period of detention was presumptively reasonable. 533 U.S. at 701. Thus, in order to demonstrate a likelihood of success on the merits, Tri has to indicate that there is good reason to believe that there is no likelihood of removal in the near future. *Id.* However, because Tri is an immigrant released under an order of supervision, Section 241.13 governs codifies how *Zadvydas* should apply:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided <u>good reason to believe</u> there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future.*

8 U.S.C. § 241.13(a) (emphasis added).[3] This therefore indicates that the subsection Tri relies upon—241.13(i)(2)-(3)—only applies where the noncitizen has made the showing of "good reason to believe there is no significant likelihood of removal." And this mirrors *Zadvydas*: "[a]fter [the] 6-

---

[3] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

month period, once the [non-citizen] provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Tri has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Reply at 2-3. Under Section 241.13(i)(2), Respondents bear the burden to establish that there is a significant likelihood that Tri may be removed in the reasonably foreseeable future. As stated by Tri, it appears that Tri is beginning to "initiate the process of requesting a Vietnamese passport," to effectuate his removal. Motion at 3. But ICE has not "procured travel documents" or demonstrated that "the Government of Vietnam has found [Tri] eligible for repatriation." *Id.* Respondents, acknowledging the "significant likelihood of removal" in the "reasonably foreseeable future" standard, have not indicated that any action has been taken toward Tri's removal. Opposition at 3-4. Respondents only assert that Tri "is subject to a final order of removal and has been detained for roughly one month, far less than the six month marker set out in *Zadvydas*," and that Vietnam is receptive to accepting pre-1995 immigrants. *Id.* at 4.

Tri acknowledges the 2020 Memorandum of Understanding between the U.S. and Vietnam, which provides a process through which the Vietnamese government could consider pre-1995 Vietnamese immigrants for removal. Petition at 6-7; *see* 2020 Memorandum of Understanding between the Department of Homeland Security of the United States of America and the Ministry of Public Security of the Socialist Republic of Vietnam §§ 8(3), (4) (November 21, 2020), https://www.nguoi-viet.com/wp-content/uploads/2021/07/Vietnam-2020-MOU-redacted-1.pdf ("2020 Memorandum").[4] But Tri emphasizes the 2020 Memorandum has not materialized in effectuating the removal of pre-1995 Vietnamese immigrants. Petition at 6-7. Tri points to: (1) *Hoang Trinh, et al v. Tae D. Johnson*, No. 8:18-cv-316-CJC-GJS, Dkt. No. 161 at 3 (C.D. Cal. Oct. 7, 2021) where ICE acknowledged, in October 2021, that the current policy found that "pre-1995

---

[4] Even if the Government can establish that Hung is removable under the 2020 Memorandum, Vietnam has total discretion whether to accept particular non-citizens so the 2020 Memorandum is insufficient on its own to show a significant likelihood of removal. *See Nguyen v. Hyde,* 788 F. Supp. 3d 144, 151 (D. Mass. 2025); *Hoac v. Becerra*, No. 25-CV-01740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Vu v. Noem*, No. 25-CV-01366, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025).

Vietnamese immigrants . . . are not likely to be removed in the reasonably foreseeable future and generally releasing pre-1995 Vietnamese immigrants within 90 days of the entry of their final orders of removal"; (2) ICE's quarterly reports showing that only four pre-1995 Vietnamese immigrants were "given travel documents" and removed; and (3) the circumstances have not changed despite ICE's June 2025 statement rescinding the finding that pre-1995 Vietnamese immigrants are unlikely to be removed. Petition at 6-7; Asian Law Caucus, *Resources on Deportation of Vietnamese Immigrants Who Entered the U.S. Before 1995* (July 15, 2025), (https://www.asianlawcaucus.org/news-resources/guides-reports/trinh-reports). Tri's third contention is supported by 2025 decisions which found that Vietnamese immigrants are unlikely to be timely removed. *Nguyen v. Scott*, 796 F.Supp.3d 703, 723 (W.D. Wash. 2025) (finding petitioner provided evidence indicating that the "process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted"); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771 at *5 (E.D. Cal. July 16, 2025) (finding removals to Vietnam are not reasonably foreseeable); *Nguyen v. Hyde*, 788 F.Supp.3d 144, 151 (D. Mass. 2025) (same).

As it stands, Tri has gone a month without a travel document, after being redetained. Although Respondents indicated a travel document is forthcoming in the near future, such anecdotal evidence is insufficient for Respondent's to establish their burden that Tri's removal is reasonably foreseeable, especially in light of Tri's assertions and supporting evidence suggesting otherwise. Notably, no travel document has been procured and Respondents have not provided any indication beyond anecdotal accounts that removal is reasonably foreseeable. Petition at 2-3. Taken together, Tri's circumstances raise doubts that Vietnam will accept him.[5]

In sum, there is no "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701. This Court thus finds that Tri has

---

[5] In Reply, Tri also raises questions as to whether his removal would comply with 8 U.S.C. § 1231(b)(3). Reply at 3. Section 1231(b)(3) prohibits removal to a country if the noncitizen's "life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." Respondents concede that Tri is a "refugee" which is defined as an individual who is unable or unwilling to return to a country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). Thus, because Tri is a refugee of Vietnam, his removal to Vietnam could violate Section 1231(b)(3). Reply at 3.

demonstrated the likelihood of success on the merits of the question of whether his detention is unlawful under *Zadvydas* on this ground.

### 2. *Tri was redetained without notice and was not provided an opportunity to be heard.*

On this ground, Tri argues that Respondents failed to provide adequate notice or an opportunity to be heard prior to Tri's redetention. Petition at 12-13; Motion at 3-4. Respondents do not contest that they properly gave notice to Tri prior to or on February 1, 2026, detailing the changed circumstances warranting removal. *See generally* Opposition. Respondents also do not contest that Tri was not afforded an opportunity to be heard. *Id.* Instead, Respondents claim that their discretion to revoke Tri's supervised release is "broad" and immediate release would not be "narrowly tailored to the [alleged] wrong." Opposition at 6-7. In Reply, Tri questions the finality of his removal order, particularly the "the propriety of the proceedings in the immigration court to justify detention pursuant to a purportedly final order of removal."[6] Reply at 3.

Respondents rely on *Rodriguez v. Hayes*, 578 F.3d 1032, 1044 (9th Cir. 2009), o*pinion amended and superseded*, 591 F.3d 1105 (9th Cir. 2010) and 8 U.S.C. § 1231 to posit that: (1) Tri's alleged due process violations are hypothetical because of Respondents' broad discretion; and (2) any procedural harm "could be cured by means short of release." Opposition at 6. The Supreme Court, however, has held that "'[t]he Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). And Respondents' cited authority, *Rodriguez*, explicitly holds that a detainee is entitled to "some opportunity to respond to the reasons for revocation." 578 F.3d at 1044.

---

[6] Tri indicates that he is "still in the process of trying to determine whether [his] waiver was valid," namely whether he was informed of his right to appeal and knew he was giving up his right. Reply at 4. Although the Court finds that Tri's contentions have merit, the Court need not address the validity of waiver in light of the due process violations stated herein.

As to Respondents' first contention, Respondents do *not*, in their Opposition, claim that Tri was: (1) provided notice of his revocation *prior* to his redentention; or (2) given an opportunity to be heard prior to his redetention. *See generally* Opposition. In light of *J.G.G.*, it appears that the applicable regulations, namely 8 U.S.C. § 241.13(i)(3) and 8 U.S.C. § 241.4(*l*)(1) are the means by which ICE has determined it will meet the due process rights of putative detainees. Respondents provide no reason that this Court should find otherwise, and this Court declines to take the extraordinary position that these individuals are not entitled to notice and an opportunity to be heard in the absence of clear direction—in binding law, in the relevant statutes, or in the applicable regulations—to that effect. *See generally* Opposition. Thus, the Court holds that Respondents' admitted failure to provide Tri notice and an opportunity to be heard constitutes an unequivocal violation of Section 241.13(i)(3).

This Court's conclusion is consistent with that of other district courts. Particularly instructive is the district court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. In *McSweeney*, it appears that the petitioner had received *adequate* notice, unlike Tri; there, the petitioner was sent a notice of the reasons for revocation of his release. *Id.* at *6. Still, because there was no interview opportunity following that notice, the Court found that the procedural deficiencies constituted violations of procedural due process. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

As to Respondent's second argument, Tri's prompt release is the remedy that will best return Tri to the status quo and restore his position as it was prior to the detention that Tri contends was in violation of his constitutional and statutory protections. The purpose of a temporary restraining order is "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed.). Though the Ninth Circuit has not opined on the matter of scope of preliminary relief in this specific

context, other courts in this Circuit have taken a similar approach. *See, e.g.*, *F.M.V. v. Wofford*, No. 1:25-CV-01381, 2025 WL 3083934, at \*7 (E.D. Cal. Nov. 4, 2025).

In any event, this Court permits the Government to remedy the procedural deficiency at issue through its Orders issued *infra*. This Court's resolution of this Motion—to order Respondents to release Tri from custody and not redetain him absent compliance with due process and his legal protections—in effect permits the Government to follow the appropriate steps to reattempt Tri's detention.[7]

Today, the Court must determine whether Tri is likely to eventually prevail on the merits. For the reasons described above, this Court finds that he is likely to succeed on the merits under both of her arguments for habeas relief. In sum, the first *Winter* factor is met here under both of Tri's arguments for habeas relief.

       ii.  The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Tri must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Tri has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Respondents have provided no evidence that Tri's detention will not be prolonged or that Tri's removal is likely to occur in the reasonably foreseeable future. *See generally* Opposition. Further, Respondents have failed to comply with the legal process that is due to his as a detained noncitizen. *J. G. G.*, 604 U.S. at 673. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Tri's ongoing detention of indeterminate length—which may lead to a deportation

---

[7] Respondents cite to *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) and *Ton v. Noem*, No. 5:25-CV-02033-SB-AGR, 2025 WL 2995068, at \*4-5 (C.D. Cal. Sept. 3, 2025). These cases are unavailing. In *Rodriguez*, the petitioner received a bond hearing and the challenge was to the hearing's adequacy. 53 F.4th at 1214. In *Ton*, the petitioner presented "no procedural evidence" from which the Court could assess a due process violation. 2025 WL 2995068, at \*4-5. Here, Tri was expressly states that he was not provided any opportunity to contest his revocation. Petition at 12-15.

sometime in the future—inherently risks his irreparable harm, as it is not clear when he will be processed, released, or removed.

Thus, as this Court has already found that Tri has a sufficient likelihood of success on the merits of both of his challenges to his current detention—one of which has a basis in Tri constitutional rights—this Court finds the second *Winter* factor is met.

> iii.   The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.

When, as here, the nonmoving party is a Respondents entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Tri's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Tri's favor. The Court agrees that the Government has a strong interest in the enforcement of federal immigration law. Opposition at 7. However, the Respondents have failed to comply with binding authorities, resulting in the violation of Tri's constitutional rights against unlawful detainment. "'[I]t is clear that it would not be equitable or in the public's interest to allow the [Respondents] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Given Tri's unlawful detention, and without any reason to believe Tri's removal or release will occur in the reasonably foreseeable future, the Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Accordingly, the third and fourth *Winter* factors are met here.

## IV.   Conclusion

For the foregoing reasons, the Motion is GRANTED IN PART. Tri's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Tri from custody (and return to him his personal belongings) within forty-eight (48) hours,[8] and they may not redetain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;

2. Respondents are enjoined from relocating Tri outside of the Central District of California pending final resolution of this matter;

3. Respondents shall not impose any release restrictions on Tri, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.[9]

4. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

    a. Respondents' brief is due at 5 PM on Tuesday, April 7, 2026. Tri may file a response brief by Monday, April 13, 2026.

    b. The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on Monday, April 6, 2026. Should the parties wish to extend either briefing deadline, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.

---

[8] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

[9] Restraints not shared by members of the public renders an individual in custody within the meaning of 28 U.S.C. § 2241. *See Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973) (holding that a person is in custody if the person "is subject to restraints 'not shared by the public generally'" and the person's "freedom of movement rests in the hands of state judicial officers"); *Jones v. Cunningham*, 371 U.S. 236, 238-39 (1963) (finding that the "chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement"). As such, prospective release restrictions, such as electronic monitoring constitute liberty constraints which do not afford petitioners complete relief.

c. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

5. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by Monday, April 6, 2026.

IT IS SO ORDERED.

Dated: March 31, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge